(100 South. 406)

No. 24497.

## HORSLEY & DUNN v. SOUTHERN STEEL PRODUCTS CO. et al.

(April 30, 1924.)

*(Syllabus by Editorial Staff.)*

Mechanics' liens ⬯281(4)—Evidence held to sustain finding that subcontractor had performed, entitling him to lien on tanks.

In subcontractor's suit to establish lien for building steel tanks, recorded under Acts Nos. 229 and 262 of 1916, evidence *held* to show that plaintiffs had performed their contract in compliance with law and that they were entitled to lien on the tanks.

Appeal from Second Judicial District Court, Parish of Webster; Robert Roberts, Jr., Judge.

Action by Horsley & Dunn against the Southern Steel Products Company and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Thigpen & Herold, C. Keller, and J. S. Atkinson, all of Shreveport, for appellants Vanada Oil Co., George O. Baird, and J. Rogers Flannery.

Drew & Drew, of Minden, for appellees.

By Division B, composed of DAWKINS, LAND, and LECHE, JJ.

LECHE, J. The present appeal was taken from a judgment in personam against the Southern Steel Products Company, and in rem, in so far as the other defendants, the Vanada Oil Company, J. Rogers Flannery. Geo. O. Baird, and the Sinclair Oil Company of Louisiana, are concerned. The amount for which the judgment was rendered, viz. $21,200.62 is declared and recognized to be secured by a lien and privilege upon ten steel tanks of 55,000 barrel capacity each, as well as upon the land on which said tanks are situated. The appeal was taken by motion in open court, and was perfected

156 LA.—8

by the Vanada Oil Company, J. Rogers Flannery, and Geo. O. Baird.

An examination of the record discloses the following facts:

The Vanada Oil Company purchased from Donald Goodwill certain lands with improvements thereon, situated in the parish of Webster. The sale was passed on January 5, 1920, and the recited consideration was $34,000, cash. About one month thereafter, on February 7, 1920, the same property was transferred by the Vanada Oil Company to J. Rogers Flannery for a like cash consideration of $34,000.

Ten steel tanks of 55,000-barrel capacity each, for the storage of oil, were erected upon the land thus acquired by the Vanada Oil Company and J. Rogers Flannery

Plaintiffs, Horsley & Dunn, subcontracted with the Southern Steel Products Company, through a Mr. Moreland, its manager and superintending engineer, to haul the steel and other material in place, to grade and level the ground for the construction of the tanks, and to build the levees or fire walls around the tanks for an agreed price of $4 per ton for hauling, and 75 cents per yard for moving dirt. The work performed by plaintiffs under their subcontract amounted according to the measurements of Moreland to $24,353.72. They were paid on account, the sum of $3,153.10, leaving a balance due in their favor and for which they presently sue, amounting to $21,200.62.

Appellants in their brief question the sufficiency of the proof offered by plaintiffs to establish the correctness of their claim, but, in our opinion, it is ample. The refusal to pay by appellants was not based upon the inaccuracy of the amount claimed by plaintiffs, but upon the belief and understanding on their part that the tanks were not affected with any lien or privilege in favor of plaintiffs. The estimates and measurements made by Moreland are not questioned, nor

are the prices stipulated in plaintiff's sub-contract shown to be above the value of work of that character. The work performed by plaintiffs was accepted by Moreland and by the owners of the tanks, and appellants are no longer in a position to seriously dispute the amount of plaintiff's claim.

The real issue involved in this controversy is whether the plaintiffs have a privilege on the tanks and on the ground upon which the tanks are situated.

A contract was entered into between the Vanada Oil Company and the Southern Steel Products Company to erect certain tanks of 55,000 barrel capacity each, upon the land sold by Donald Goodwill to the Vanada Oil Company. That contract was drawn in writing, but it is not copied in the record, so that we can only approximate the date upon which it was entered into, and fix the number of tanks which were contemplated to be erected by the parties under the contract, from other facts and circumstances shown by the record. Horsley and Dunn began to perform their work on January 17, 1920, and the contract of the Southern Steel Products Company must then have been in existence prior to that date, and the erection of the tanks must have begun while the land was owned by the Vanada Oil Company.

It further appears that Horsley and Dunn completed their work about May 29, 1920, and therefore when J. Rogers Flannery bought the land from the Vanada Oil Company on February 7, 1920, the tanks must have been in course of construction. Flannery could not help being aware that the building contract of the Southern Steel Products Company was being performed, when he bought the land. It therefore appears that Flannery bought with full knowledge of the existence of the contract and did, by his purchase and his subsequent conduct, substitute himself for and in place of the Vanada Oil Company. He cannot and does not seriously dispute that fact. During the month of June, 1920, after the tanks had been built and completed, he acknowledged and claimed ownership of the same, by signing several acts of sale in which the tanks were transferred to the Sinclair Oil Company of Louisiana.

We therefore assume that J. Rogers Flannery has placed himself in a position where he may be dealt with and considered as if he were a party, as owner, to the contract between the Vanada Oil Company and the Southern Steel Products Company, in so far as plaintiffs are concerned.

It further appears from the record that there were altogether ten tanks erected, and that two of the tanks were built of material owned and furnished by George O. Baird. That these two tanks were partly erected by the United Iron Workers, but that plaintiffs, Horsley & Dunn, did all the work of hauling, leveling, and wall-building for these two tanks, in the same manner and to the same extent as they did in the construction of the other eight tanks. Baird admits in his testimony that he engaged a Mr. White to do the hauling and leveling. White was a foreman of the Southern Steel Products Company, and he and Moreland then employed plaintiffs to do that part of the work. The work was accepted by Baird, who refused to pay plaintiffs because, when presented with the claim of the latter, he testifies to the effect that he had already paid out more money that he had undertaken to pay.

It is difficult to say, from the evidence in the record, what were the relations between the Vanada Oil Company, Flannery, and Baird, the three appellants. No satisfactory explanation is given why Baird should have undertaken to build two steel tanks costing many thousands of dollars, upon land belonging to Flannery, and why Flannery should have permitted Baird to do so. Nor is any clear reason given why Baird and Flannery should have jointly signed, as vendors, the various acts of sale by which all the tanks

were subsequently sold to the Sinclair Oil Company. According to their own admissions, there were eight tanks belonging to Flannery and two belonging to Baird.

Baird attempts to give an explanation, but we frankly admit that it is not very intelligible to us. The evidence upon that subject is somewhat hazy, but it is a fact that plaintiffs performed the work which they had undertaken according to a subcontract with the Southern Steel Products Company; that such work was completed to the satisfaction of the principal contractors; that it was accepted by the owners of the tanks; and that plaintiffs have not been paid.

The evidence in the record establishes the fact that plaintiffs completed their work on May 29, 1920, that they recorded in due form their lien, under Act 229, p. 494, and Act 262, p. 536, of 1916, on May 14 and June 2, 1920, and served notice of their claims on the owners, on June 14 and June 16, 1920, all within 45 days of the completion and acceptance of their work.

Plaintiffs have performed their subcontract and have complied with the appropriate provisions of the law, and we therefore see no reason to disturb the findings of the trial court.

It is therefore ordered that the judgment of the district court be affirmed.